Filed 8/20/14  P. v. Larkin CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

<table>
<tr><td>THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM LARKIN,<br><br>      Defendant and Appellant.</td><td>H039857<br>(Monterey County<br> Super. Ct. No. SS072851A)</td></tr>
</table>

Following the successful completion of probation, the trial court dismissed a 2008 felony complaint of domestic violence against defendant William Larkin, pursuant to Penal Code section 1203.4.[1]  Citing the victim's ongoing need to feel safe, however, the trial court declined defendant's later request to modify a 10-year protective order issued at the time of the 2008 judgment.  On appeal, defendant contends that the court should have terminated the protective order under section 1203.4, which releases a defendant who has successfully completed probation from "all penalties and disabilities resulting from the offense of which he or she has been convicted."  We disagree and affirm the order.

*Background*

On February 27, 2008, defendant entered a negotiated plea of no contest to inflicting corporal injury on a spouse or cohabitant (§ 273.5) and making a criminal threat

---

[1]  All further statutory references are to the Penal Code.

(§ 422).  The trial court then dismissed an additional charge of attempted murder and an allegation of a prior conviction of violating section 273.5.  On April 3, 2008, the court suspended imposition of sentence and placed defendant on probation for four years.  Among the conditions of his probation were that defendant have no contact with the victim, "Jane Doe," stay 100 yards away from her, and "[s]tay at least 100 yards away from the Moss Landing Harbor District," where his offenses had occurred.  A separate criminal protective order pursuant to section 136.2 again prohibited defendant from contacting or coming within 100 yards of Jane Doe.  This "CLETS" order, issued by stipulation of the parties, was to expire 10 years later, on April 3, 2018.[2]

On May 11, 2012, the trial court granted defendant's request, unopposed by the People, to set aside his conviction and dismiss the charges pursuant to section 1203.4.[3] On April 10, 2013, defendant moved to modify the section 136.2 protective order to enable him to work on his boat, which was moored at the Moss Landing Harbor District and for which he had continued to pay slip fees.  By this time the probation condition requiring him to stay away from that location had expired.  But Jane Doe had been

---

[2]  Both parties cite subdivision (i)(1) of the current version of section 136.2, which specifically refers to post-conviction restraining orders of "up to 10 years."  Indeed, the People urge this court not to "ignore the plain language" of the cited provision. Subdivision (i)(1), however, did not exist in 2008, when the protective order was issued in this case, nor was there any reference in the 2008 statute to post-conviction orders. Thus, at that time a protective order of 10 years' duration was not authorized by section 136.2 (nor, for that matter, by section 1203.097) at the time it was issued, although section 273.5 did contain such a provision.  (See *People v. Stone* (2004) 123 Cal.App.4th 153, 159; accord, *People v. Selga* (2008) 162 Cal. App. 4th 113, 118.)  The validity of the stipulated protective order, however, is not before us in this appeal.

[3]  The district attorney had no objection to the request under section 1203.4, but he did oppose the request under section 17, subdivision (b)(3), pertaining to "wobbler" offenses. That opposition is puzzling, there is no indication that defendant made his request under the latter statute.

2

known to frequent the harbor, and due to its size, it would be impossible for him to be there and stay 100 yards away from any point--or any individual-- within the harbor.

Defendant pointed out that he had successfully completed probation, the charges had been dismissed, and he had "taken huge steps towards his rehabilitation and towards maintaining his sobriety." In order to repair and use his boat, defendant asked the court to modify the protective order to provide that "if, in going to the harbor district for purposes of working [on] or launching his boat, Mr. Larkin were to be within one hundred yards of the protected party, that in and of itself would not constitute a violation of the order." He did not want to have any contact with Jane Doe or scare her, but only to access his boat, so he "would still take all pains necessary to have no direct or indirect contact with Jane Doe."

The trial court considered reducing the stay-away order to 20 or 50 yards, but after hearing from Jane Doe and reviewing the original probation report, it determined that such a modification would not allow the victim to feel safe. Accordingly, the court denied the request. Defendant filed a timely notice of appeal.

*Discussion*

Although in his 2013 motion defendant asked the court below for a *modification* of the 10-year protective order, he now contends that the order should have been *terminated* when the charges were dismissed under section 1203.4. Defendant did not make this request to the trial court; consequently, his claim of error has been forfeited. The People, however, do not urge rejection of this argument as untimely; they instead suggest that defendant may not be heard for another reason: He stipulated to the imposition of the protective order and therefore "forfeited his claim on appeal, and is estopped from raising the claim here." But defendant has never contested the *imposition* of the order; he only sought a modification to accommodate his need to access his boat at the harbor. None of the cases cited by the People on this point is responsive to

3

defendant's position.  Likewise, the People's emphasis on the trial court's statutory prerogative to impose the protective order is superfluous.

It is defendant's failure to assert a *statutory* bar to *continuing* the protective order that may be deemed a forfeiture, not the imposition of the order in the first place. Nevertheless, because the People do not oppose our consideration of the argument belatedly raised by defendant, we will address it.

Section 1203.4 provides, in pertinent part:  "(a)(1) In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be *released from all penalties and disabilities* resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code."  (Italics added.) The question before us is whether the protective order restraining defendant from coming within 100 yards of the victim is a penalty or disability within the meaning of this statute.

" 'California decisions have established that the "penalties and disabilities" resulting from conviction, from which a probationer may be released pursuant to Penal Code section 1203.4, do not include nonpenal restrictions or qualifications imposed for public protection . . . .[¶] Our courts have drawn a distinction between penalties imposed on a felon as further punishment for the crime, as to which vacation under Penal Code

4

section 1203.4 generally affords relief, and nonpenal restrictions adopted for protection of public safety and welfare.' (*People v. Vasquez* (2001) 25 Cal.4th 1225, 1230.) The California Supreme Court held that the disabilities from which a certificate can release a petitioner 'serve vital public interests,' are civil rather than criminal, and do not involve punishment for the underlying crime. (*People v. Ansell* (2001) 25 Cal.4th 868, 888-889.)" (*People v. Zeigler* (2012) 211 Cal.App.4th 638, 675 [conc. opn. of Mihara, J.].)

Defendant contends that the mandatory language of section 1203.4 entitled him to a release from the protective order because it was "clearly a penalty imposed on appellant as further punishment for his crime. The effect of the order is to prevent him from going to the harbor where his boat is docked. He is prevented from working on or launching the boat."[4] We disagree with both the factual premise and the conclusion. Defendant's stay-away order was lifted as to the harbor district at the termination of his probation. He was thus released from the probationary restriction on access to his boat. From that point on it was only when the victim was present that he was required to leave, with or without the boat. The district attorney and defense counsel informed the court that Jane Doe did not work "steady hours" at the harbor, but was there only "from time to time."

The 2008 order was imposed not as a punishment, but as a measure designed to ensure the safety of the victim. It is true that there continues to be an inherent disability in the protective order by making access to his property more difficult, but the current

---

[4] Again the People's response is not helpful. They suggest that because section 1203.4 does not specifically mention criminal protective orders, the Legislature did not consider them penalties or disabilities. The statute, however, does not specify *any* conditions that qualify as "penalties and disabilities"; thus, it is useless to point to one condition as if it had been deliberately but implicitly excluded from the reach of the mandate. The further suggestion that accepting defendant's position would deprive the court of the authority "to issue a ten-year protective order" is illogical for the reason discussed above: the *issuance* of the order has not been contested at any time.

5

stay-away order is not applicable as to the harbor district, but only as to the victim.  We can readily understand that the situation at this point is far from ideal; however, the court's decision to keep the protective order in place was not erroneous as a matter of law, but was a discretionary decision.

Defendant acted commendably by seeking a modification to enable him to work on his boat while maintaining a lawful distance from the victim; but we cannot say that the refusal of his request was in excess of the trial court's discretion.  Should he obtain a modification or termination in the future, unquestionably his access will be unimpeded by Jane Doe's presence.  In the meantime, he may work on his boat—and certainly take it out of the harbor—except when Jane Doe is present.  Section 1203.4 itself did not compel the court to terminate the protective order.

## *Disposition*

The order is affirmed.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.

7